**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA**

FILED

DEC 4 2018

U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>TIMOTHY PEER,<br><br>                    Defendant. | Criminal No. 3:18-CR-66<br><br>Violations: 33 U.S.C. § 1311(a)<br>            33 U.S.C. § 1319(c)(2)(A)<br>            33 U.S.C. § 1319(c)(4)<br>            18 U.S.C. § 1341 |

## BACKGROUND

At all relevant times to this Indictment:

1.      Defendant **TIMOTHY PEER**, individually, and doing business as Mountainaire Village Utility, LLC ("MVU"), was engaged in the business of treating domestic sewage from residences and businesses in the Mountainaire Village development, near Ridgeley, Mineral County, West Virginia, from in or about 2008 to in or about July, 2016.

2.      Defendant **TIMOTHY PEER** purchased the MVU treatment plant [hereinafter, "the treatment plant"] in early 2008. At all times relevant hereto, defendant **TIMOTHY PEER** was the sole owner and operator of the treatment plant. At all times relevant hereto, defendant **TIMOTHY PEER** was licensed by the State of West Virginia as a sewage treatment plant operator. At all times relevant hereto, including before and after he purchased the treatment plant, defendant **TIMOTHY PEER** was employed as a sewage treatment plant operator by the Franklin Public Service District in Mineral County, West Virginia.

3. The Federal Water Pollution Control Act, Title 33, United States Code, Section 1251 et. seq. [hereinafter referred to as the "Clean Water Act"], was enacted by Congress to restore and maintain the chemical, physical, and biological quality of the nation's waters.

4. The Clean Water Act, and the regulations promulgated pursuant thereto, prohibited the discharge of any pollutant from a point source into the waters of the United States, except in compliance with a permit issued pursuant to the Clean Water Act under the National Pollution Discharge Elimination System [hereinafter, "NPDES"] by the United States Environmental Protection Agency [hereinafter, "EPA"] or an authorized state, 33 U.S.C. §§ 1311(a) and 1342.

5. The EPA delegated authority to administer and enforce the NPDES program to the State of West Virginia in May, 1982. See 47 Fed. Reg. 22,363 (May 24, 1982). Thereafter, and at all relevant times, the program in West Virginia was administered by the West Virginia Department of Environmental Protection [hereinafter, "WVDEP"], subject to oversight by the EPA.

6. Pursuant to the delegation of authority, the WVDEP issued general NPDES/WVG, permit no. WV0103110/WVG550462 which regulated sewage treatment and disposal systems with a design capability of 50,000 gallons per day or less.

7. Defendant **TIMOTHY PEER** operated the sewage treatment plant pursuant to general NPDES/WVG, permit no. WV0103110/WVG550462. This permit authorized defendant **TIMOTHY PEER** to discharge properly treated domestic sewage into a tributary of the North Branch of the Potomac River, a water of the United States.

8. The sewage treatment plant operated by defendant **TIMOTHY PEER** was designed to collect domestic sewage through pipes that led to a treatment plant which featured chambers for the screening of heavy solids and aeration to facilitate bacterial breakdown of the

sewage. The sewage then flowed to a finishing pond which allowed for the settling of dissolved solids. It then flowed through a pipe to a chlorination chamber for disinfection before being discharged through a pipe into a tributary of the North Branch of the Potomac River at an approved location which is specified in the NPDES permit.

9. Defendant **TIMOTHY PEER** was required to comply with all terms and conditions of the NPDES permit, including but not limited to: properly operating and maintaining the treatment plant; preventing the bypassing of any portion of the treatment plant except under specific enumerated circumstances; properly disinfecting the effluent (that which flowed out of the finishing pond) prior to discharge; monitoring the domestic sewage discharges at least once each calendar quarter; analyzing domestic sewage samples and submitting the analytical results to the WVDEP each calendar quarter; and ensuring that all samples collected and analyzed were representative of the volume and nature of the monitored discharge.

10. From in or about 2014 to in or about July, 2016, defendant **TIMOTHY PEER** failed to maintain the treatment plant. Thus the treatment plant became non-operational and incapable of properly treating domestic sewage. As a result, raw sewage flowing through the treatment plant was untreated or only partially treated.

11. From in or about 2015 to in or about July, 2016, the pipe leading from the finishing pond to the chlorination unit of the treatment plant was clogged. As a result, the amount of sewage in the pond exceeded the capacity of the pond, and untreated or inadequately treated domestic sewage was discharged from an overflow or bypass pipe located near the top of the pond.

12. The sewage discharged through the overflow or bypass pipe in the finishing pond flowed into an unnamed tributary of the North Branch of the Potomac River, a water of the

United States. The sewage discharged in this manner had not been disinfected with chlorine in compliance with the permit.

13. For the calendar quarters ending on January 31, 2014, January 31, 2015, March 31, 2015 and January 31, 2016, Defendant **TIMOTHY PEER** failed to monitor the wastewater discharged from the treatment system, failed to take samples and analyze the wastewater for pollutant levels, and failed to submit analytical results to the WVDEP as required by the NPDES permit.

14.    For the calendar quarters ending on December 31, 2013, June 30, 2014, September 30, 2014, December 31, 2014, September 30, 2015, and December 31, 2015, Defendant **TIMOTHY PEER** submitted monitoring reports [hereinafter, "DMR's"] to the WVDEP on which he stated there was no wastewater discharged from the treatment system. Those reports did not accurately reflect the volume and nature of the discharges from the treatment plant.

## COUNT ONE
(Knowing Violation of Permit Conditions)

15.     Paragraphs 1 through 14 of the Indictment are hereby re-alleged and incorporated as if set forth fully herein.

16.     From in or about 2014 to in or about July, 2016, in Mineral County, West Virginia, within the Northern District of West Virginia, defendant **TIMOTHY PEER** did knowingly violate conditions of a permit issued by the State of West Virginia implementing sections of the Clean Water Act (33 U.S.C. § 1311), to wit: NPDES permit no. WV0103110/WVG550462, by failing to properly operate and maintain the treatment plant; bypassing portions of the treatment system; failing to disinfect the effluent; failing to monitor the domestic sewage discharges at least once each calendar quarter; failing to analyze domestic sewage samples and submit the analytical results to the WVDEP each calendar quarter; and submitting quarterly monitoring reports containing sampling data to the WVDEP that was not representative of the volume and nature of the discharges from the treatment plant,

In violation of Title 33, United States Code, Sections 1311(a) and 1319(c)(2)(A).

## COUNTS TWO THROUGH SIX
(Knowing Discharges of Pollutants in Violation of Permit)

17.     Paragraphs 1 through 14 of the Indictment are hereby re-alleged and incorporated as if set forth fully herein.

18.     The bypass pipe located in the treatment pond was not an approved discharge point under the NPDES permit for the discharge of pollutants from the treatment plant into waters of the United States.  The bypass pipe could only be utilized under the explicitly enumerated conditions in the permit, none of which existed at the relevant times.

19.     After the pipe designed to carry water from the finishing pond to the chlorination unit became clogged, domestic sewage discharged through the bypass pipe instead of from the approved NPDES discharge point.

20.     On or about each of the following dates, in Mineral County, West Virginia, within the Northern District of West Virginia, defendant **TIMOTHY PEER** did knowingly discharge, and cause to be discharged, pollutants in the form of domestic sewage from a point source, that is, the bypass pipe located in the finishing pond, into the North Branch of the Potomac River, a water of the United States, in violation of Clean Water Act NPDES/WVG, permit no. WV0103110/WVG550462, each date being a separate Count:

| Count Two | May 6, 2016 | Point source discharge |
| Count Three | May 25, 2016 | Point source discharge |
| Count Four | June 13, 2016 | Point source discharge |
| Count Five | June 14, 2016 | Point source discharge |
| Count Six | June 27, 2016 | Point source discharge |

In violation of Title 33, United States Code, Sections 1311(a) and 1319(c)(2)(A).

## COUNT SEVEN
(Knowing Discharge of a Pollutant Without a Permit)

21.    Paragraphs 1 through 14 of the Indictment are hereby re-alleged and incorporated as if set forth fully herein.

22.    On or about April 19, 2016, defendant **TIMOTHY PEER**, caused the pumping of domestic sewage from the treatment pond, and the discharge of domestic sewage into a storm drain connected to the North Branch of the Potomac River.

23.    On or about April 19, 2016, in Mineral County, West Virginia, within the Northern District of West Virginia, defendant **TIMOTHY PEER** did knowingly discharge, and cause to be discharged, pollutants in the form of domestic sewage, from a point source, that is, a pump connected to the finishing pond, into the North Branch of the Potomac River, a water of the United States, without a permit issued pursuant to the Clean Water Act for said discharge,

In violation of Title 33, United States Code, Sections 1311(a) and 1319(c)(2)(A).

## COUNTS EIGHT THROUGH THIRTEEN
(False Statements on Discharge Monitoring Reports)

25.    Paragraphs 1 through 14 of the Indictment are hereby re-alleged and incorporated as if set forth fully herein.

26.    Defendant **TIMOTHY PEER** was required by the Clean Water Act and the terms of the NPDES permit to submit discharge monitoring reports [hereinafter, DMR's] each calendar quarter to the WVDEP indicating the concentration and/or quantity of certain pollutants discharged from the treatment plant.

27.    From in or about October 2013 to in or about January 2016, defendant **TIMOTHY PEER** submitted quarterly DMR's to the WVDEP in which he asserted there was "no flow" from his treatment plant into waters of the United States.

28.    When he submitted the "no flow" DMR's to WVDEP, defendant **TIMOTHY PEER** knew that untreated or partially treated domestic sewage was being discharged from his treatment plant.

29.    On or about each of the following dates, in Mineral County, West Virginia, within the Northern District of West Virginia, defendant **TIMOTHY PEER** did knowingly submit materially false statements on DMR's required to be maintained and filed by the Clean Water Act:

| | | |
|---|---|---|
| **Count Eight** | December 31, 2013 | Last quarter, 2013 DMR |
| **Count Nine** | June 30, 2014 | Second quarter, 2014 DMR |
| **Count Ten** | September 30, 2014 | Third quarter, 2014 DMR |
| **Count Eleven** | December 31, 2014 | Last quarter, 2014 DMR |
| **Count Twelve** | September 30, 2015 | Third quarter, 2015 DMR |
| **Count Thirteen** | December 31, 2015 | Last quarter, 2015 DMR |

In violation of Title 33, United States Code, Section 1319(c)(4).

## COUNT FOURTEEN
(Mail Fraud)

30.     Paragraphs 1 through 14 of the Indictment are hereby re-alleged and incorporated as if set forth fully herein.

31.     Defendant **TIMOTHY PEER** used the United States Postal Service to mail and deliver monthly bills for domestic sewage treatment to MVU customers.

32.     Defendant **TIMOTHY PEER** continued to mail bills and receive payments after he stopped maintaining the treatment plant and knew it was no longer capable of adequately treating customers' domestic sewage.

33.     From in or about 2014 to in or about July, 2016, defendant **TIMOTHY PEER** did knowingly devise a scheme or artifice to defraud and obtain money from the customers of MVU as follows:

A. Defendant **TIMOTHY PEER** prepared and submitted billing invoices to MVU customers for payment of domestic sewage treatment services;

B. The invoices were materially false and misleading in that they concealed and omitted the fact that sewage treatment services were not being provided because the treatment plant was non-functional;

C. The invoices were intended to, and did, result in payments being made by customers for the purported treatment of domestic sewage.

34.     On or about January 19, 2016, in Mineral County, West Virginia, within the Northern District of West Virginia, with intent to defraud, and for the purpose of executing the above-described scheme and artifice, defendant **TIMOTHY PEER** did knowingly place in an authorized depository for mail a matter and thing to be sent and delivered by the Postal Service, and did cause to be delivered by mail according to the direction thereon a matter and thing, that

is, billing invoice No. 7329, dated January 15, 2016 and postmarked January 19, 2016, which contained a material concealment of fact and material omission, that is, the fact that sewage treatment services were not being provided, to be delivered by the United States Postal Service,

In violation of Title 18, United States Code, Section 1341.

## FORFEITURE ALLEGATION

*Mail Fraud*

1. Pursuant to Title 28, United States Code, Section 2461(c), Title 18, United States Code, Sections 981(a)(1)(C), 1956(c)(7), 1961(1), and Title 21, United States Code, Section 853, the government will seek the forfeiture of property as part of the sentence imposed in this case; that is, the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 1341, or a conspiracy to violate such offense, including a money judgment to be determined by the court at sentencing.

2. Pursuant to Title 28, United States Code, Section 2461(c), the government will seek forfeiture of substitute property up to the value of property subject to direct forfeiture that is not available for forfeiture on account of any act or omission contemplated by Title 21, United States Code, Section 853(p)(1).

True Bill

/s/_____
Foreperson

/s/ WILLIAM J. POWELL_____
WILLIAM J. POWELL
United States Attorney

David J. Perri
Assistant United States Attorney